E. MARTIN ESTRADA
United States Attorney
MACK E. JENKINS
Assistant United States Attorney
Chief, Criminal Division
ANDREW BROWN (Cal. Bar No. 172009)
Assistant United States Attorney
Major Frauds Section
     1100 United States Courthouse
     312 North Spring Street
     Los Angeles, California 90012
     Telephone: (213) 894-0102
     Facsimile: (213) 894-6269
     E-mail:    andrew.brown@usdoj.gov
Attorneys for Plaintiff
UNITED STATES OF AMERICA

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>CAROLINE JOANNE HERRLING,<br>  aka "Carrie Phenix,"<br><br>  Defendant. | No. 2:23-CR-59-MEMF<br><br>GOVERNMENT'S RESPONSE TO DEFENDANT'S SENTENCING REPLY; DECLARATION OF INSPECTOR VERSOZA; EXHIBIT<br><br>Sentencing: March 15, 2024<br>             2:00 p.m. |

   On March 1, 2024, defendant lodged her Reply to the Government's Sentencing Position under seal.  (Hereafter, "Defendant's Reply Brief," which the government anticipates will be assigned docket number 64 when filed.)  Although labelled a reply, it included new arguments which should have been included in defendant's initial sentencing position.  Below, the government responds only to defendant's new arguments.  The government plans to file also an under seal response to address those issues raised in Defendant's Reply Brief that are confidential.

### A. DEFENDANT ATTEMPT TO TRANSFER HER HOUSE TO DEFEAT FORFEITURE

Defendant claims she "made no attempt to transfer her residence to defeat its potential forfeiture." (Defendant's Reply Brief page 6.) Instead she claims that she merely discussed selling it in an effort to raise funds to pay restitution in this case. It is certainly true that she discussed selling the house in calls from MDC which she knew were recorded. But she also explicitly stated that she wanted to put the house into someone else's name to prevent its forfeiture:

Defendant:          Okay. Got a couple of things for you guys. Can I, can I give you guys my house? It's the first one.

Defendant's Mother: And then they'll throw us in jail too.

Defendant:          No, they won't. Nope. Not at all. But can I give you my house so it doesn't get seized? . . . .

(Versoza Decl. ¶ 10.)

### B. THE SUICIDE OF DEFENDANT'S VICTIM ROBERT TASCON IS AGGRAVATING

Defendant claims that the Court cannot increase her sentence because one of her victims committed suicide after losing his only asset to her. In a cruel twist of the knife, defendant tries to suggest that Robert Tascon's common-law wife, Miracle Williams, was responsible for his death because a roommate said she earlier possessed handgun, and Miracle Williams denied there was one in the house. Indeed, defendant asks this Court to disbelieve that Mr. Tascon committed suicide at all, despite the police investigation so finding.

Defendant's slanderous argument victimizes Miracle Williams again. It is true that Robert Tascon was the beneficiary of a trust

2

that paid his living expenses. But the mere fact that he had a stipend to live off of does not establish that he could accept with equanimity the loss of his sole asset, much less the stress of litigation in a vain effort to get it back, and the fear that those who had stolen his identity keep victimize him again. Instead, those closest to him believed the fraud contributed to Mr. Tascon's suicide. (Versoza Decl. ¶ 11: an attorney friend said the fraud was a "huge factor" in Mr. Tascon's suicide. See also, dkt. 47-1, exh. page 9, and 54-1, exh. pages 1-3.)

According to the terms of Mr. Tascon's trust, all its assets would be given to charity if he died without an heir, as occurred. For this reason, Miracle Williams lost not only the love of her life when Mr. Tascon killed himself, but also the financial support that came with being Mr. Tascon's wife. The only assets that Mr. Tascon could have bequeathed to Ms. Williams were the ones in his name, namely the car he drove and the house that had been stolen from him by defendant and her co-conspirators. (Versoza Decl. ¶ 11)

Defendant also argues that she should not be held to account for Mr. Tascon's suicide because, she claims, another person came up with the idea of stealing Mr. Tascon's house. While defendant did not act alone, she admitted participating in the conspiracy to steal Mr. Tascon's house, and Mr. Tascon's suicide is an aggravating factor for which defendant is in part responsible.

C. **DEFENDANT'S FIREARMS AND FAKE BADGES**

Defendant attempts to avoid responsibility for the 16 firearms and three badges seized from her home. (Defendant's Reply Brief page 8). She argues that "Many of the weapons were Airsoft BB guns," and that there "were multiple individuals living in the

residence" in any event. Defendant's arguments are misleading. While there were multiple individuals living at the residence, defendant admitted that the badges and some of the real firearms were hers. (PSR ¶ 52, 53; Compl. Aff. ¶ 96: Herrling "admitted to owning some guns".) Indeed, the agents did not bother to take the BB guns; all 16 of the firearms that were seized were real, including the loaded pistol in defendant's purse. (PSR 104.)

### D. DEFENDANT MISREPRESENTED HERSELF AS AN ATTORNEY

Defendant claims that she "never represented herself as an attorney for the sale of the Tascon property." (Defendant's Reply Brief page 9.) That is contradicted by a Los Angeles Police Department report:

> The former property owner of 5309 Louise A venue, Robert Tascon alleged that his signature on the grant deed, and other sale documents, transferring title to LDAC were forged. In Spring of 2021, Steven Tobias, an employee of LDAC was approached by a woman who identifying herself as, Caroline Phenix [defendant Herrling's alias]. <u>Phenix was representing herself as an attorney who represented homeowners in distressed situations needing to sell</u>. Phenix showed Tobias multiple properties her clients were ostensibly selling, including 5309 Louise Avenue [Robert Tascon's house].

(Exh., emphasis added; see also PSR ¶ 44.)

### E. DEFENDANT HAS NOT CLEARLY DEMONSTRATED ACCEPTANCE OF RESPONSIBILITY

It is defendant's burden to establish that she has "clearly" accepted responsibility for her offense. <u>United States v. Alexander</u>, 48 F.3d 1477, 1493 (9th Cir. 1995); USSG § 3E1.1(a). In addition to the ways in which defendant instead showed the opposite, as previously described in both the Presentence Report and the government's sentencing briefs, defendant now has attempted to

deceive the Court by falsely claiming she did not misrepresent herself as an attorney, did not attempt to forestall the forfeiture of her home by putting it in someone else's name, and misleadingly attempted to avoid responsibility for the numerous firearms and fake law enforcement badges in her home.  Cf., USSG 3E1.1, app. n. 1(A) (a "defendant who falsely denies, or frivolously contests, relevant conduct that the court determines to be true has acted in a manner inconsistent with acceptance of responsibility.").

| | |
|---|---|
| Dated: March 6, 2024 | Respectfully submitted, |
| | E. MARTIN ESTRADA<br>United States Attorney |
| | MACK E. JENKINS<br>Assistant United States Attorney<br>Chief, Criminal Division |
| | *Andrew Brown* |
| | ANDREW BROWN<br>Assistant United States Attorney |
| | Attorneys for Plaintiff<br>UNITED STATES OF AMERICA |

**Declaration of Lyndon Versoza**
[paragraphs consecutively numbered from his earlier declaration]

I, LYNDON VERSOZA, do hereby declare and affirm:

9.   I have been a Postal Inspector since 2005, and am the case agent.

10.   I have reviewed the accompanying brief, which contains a correct partial transcript taken from a jail recording of Caroline Herrling's call to her parents asking to have her house put in their names to avoid it being seized by the government.  I listened to many jail calls from Ms. Herrling, who appears to be well aware that her calls are recorded.  Sometimes she inserts self-serving statements into calls, speaks in coded language, or changes her tone abruptly, seemingly to indicate that part of her conversation is not to be taken literally, but that her listener must read between the lines.  This is common in jail calls, as is Ms. Herrling's using the PIN codes of other prisoners, which makes it hard for the Metropolitan Detention Center to link her to a call, as their records would indicate that a different prisoner placed that call. I have listened to other calls from Ms. Herrling in which she discusses selling her house, which she seems to believe contains a lot of equity.

11.   On March 5, 2024, I telephoned Travis Hartgraves who works at a law firm that victim Robert Tascon used, and who had befriended Mr. Tascon.  Mr. Hartgraves said:  Robert Tascon was the beneficiary of a trust that paid him a stipend that covered his living expenses. According to the trust, if Mr. Tascon died without producing an heir, the remainder of the trust was to be given to a number of charities.  Because Mr. Tascon committed suicide without having an

6

heir, the trust was liquidated, and they had to drop the lawsuit to recover the house stolen from Mr. Tascon because there was no money to pay the Los Angeles attorney who was pursuing it.  In contrast, Mr. Tascon owned two assets outright: a car and the house that was stolen from him.  He could have done anything with the value of the house, but otherwise only had his living expenses covered by payments from the trust every two weeks.  Mr. Hartgraves said he was not a doctor, but believed that the theft of Mr. Tascon's identity and house, and the stress of the lawsuit to recover it, was a "huge factor" in Mr. Tascon's suicide.  He explained that Mr. Tascon was "so deep in a hole" that he could not see a way out.  He also said that because of the theft of Mr. Tascon's only asset, and the liquidation of the trust, Mr. Tascon had no assets to leave to Miracle Williams.

    12.  I attached a true and correct copy of part of an LAPD report describing how defendant misrepresented herself as attorney "Caroline Phenix," her alias.

    I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

    Dated: March 6, 2024

/s *Lyndon Versoza*

Inspector Lyndon Versoza

## CONTINUATION SHEET

Los Angeles Police Department

| PAGE NO. 2/4 | TYPE OF REPORT: Forgery | | | BOOKING NO. | DR NO. 22016334 | |
|---|---|---|---|---|---|---|
| ITEM NO. | QUAN | ARTICLE | SERIAL NO | BRAND | MODEL NO. | MISC DESCRIPTION (EG. COLOR, SIZE, INSCRIPTIONS, CALIBER, REVOLVER, ETC) | DOLLAR VALUE |

**Source of Activity:**

I, Detective Segura, Serial No. 32218, Officer-in-Charge of the Real Estate Fraud Unit had received an email from LASD, Sgt. Jacqueline Luna, Fraud & Cyber Crimes Bureau regarding a possible Forgery regarding the property located at 5309 Louise Avenue, Los Angeles, CA 91316 (LAPD Jurisdiction). Sgt. Luna had received a referral from Gloria Payne, Fraud Review Administrator for Fidelity National Title Group. The referral stated that the former owner, **Robert Tascon** alleged his signature on the grant deed, and other sale documents, transferring title to the Insured Owner, Daniel Singh of **Land Developers & Associates Corporation (LDAC), a California Corporation** were forged. The following narrative is paraphrased from Gloria Payne's referral addressed to Sgt. Luna.

**Investigation:**

Gloria Payne is a Fraud Review Administrator for Fidelity National Title Group (FNTG). FNTG is the parent group of several title insurance underwriters, including FNTG which issues title insurance policies, commitments and other assurances to lending institutions, companies and individuals in connection with the purchase and finance of real estate.

FNTG was made aware that the potential crime of Identity Theft and Forgery may have occurred in connection with the property at 5309 Louise Avenue, Los Angeles, CA. Payne stated that FNTG may become the victim in the future to the extent a loss is paid under the title insurance policy issued by the company to the owner(s) and/or lender(s).

The former property owner of 5309 Louise Avenue, Robert Tascon alleged that his signature on the grant deed, and other sale documents, transferring title to LDAC were forged. In Spring of 2021, Steven Tobias, an employee of LDAC was approached by a woman who identifying herself as, Caroline Phenix. Phenix was representing herself as an attorney who represented homeowners in distressed situations needing to sell. Phenix showed Tobias multiple properties her clients were ostensibly selling, including 5309 Louise Avenue. The Insured had not entered 5309 Louise Avenue property because squatters were present. However, on August 25, 2021, LDAC entered into a purchase agreement for the property at 5309 Louise Avenue with Robert Tascon, with a sale price of $1.5 Million.

On September 7, 2021, a Grant Deed was supposedly executed by Robert Tascon in favor of Daniel Singh, individually, principal of the Insured, but was never recorded. On the same day, a Special Power of Attorney in the name of Shawn Hassanshahi was supposedly executed by Tascon authorizing execution of the sale documents for the 5309 Louise Avenue property. On September 8, 2021, someone claiming to be Tascon executed escrow instructions with Global First Escrow for distribution of the net sales proceeds as follows: *$118,000.00 to Lexington National Insurance Corporation General Escrow*; *$950,000.00 to Jason Kroth, listed as a creditor* ; and *$343,131.00 be paid to Robert John Tascon in the form of a check.*

EXHIBIT